IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | SA-22-CR-00306-OLG |
| | § | |
| vs. | § | |
| | § | |
| (1) EMMANUEL ANTIONE HEMPHILL, | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion to Dismiss Indictment [#46], Defendant's Motion to Suppress Evidence and Dismiss Indictment [#59], and Defendant's Motion to Suppress Evidence and Dismiss Indictment [#78], which were referred to the undersigned for disposition. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motions be **denied**.

## I. Background

On October 7, 2014, a federal jury convicted Defendant of possession with intent to distribute cocaine and conspiracy to do the same. *See United States v. Emmanuel Hemphill*, SA-12-CR-354-OLG (dkt. 213). The Court sentenced Defendant to 137 months of imprisonment, followed by a 120-month term of supervised release. *Id.* (dkt. 236). According to the criminal complaint in this case, on March 4, 2022, near the end of his prison term, Defendant was permitted to participate in a residential re-entry center program. (Compl. [#3], at ¶ 9.) The Defendant left

the program without permission on March 17, 2022, and never returned. (*Id.* at ¶ 12.) A federal warrant was thereafter issued for Defendant's arrest. (Arrest Warrant [#4].)

A police dashboard camera captured the arrest of Defendant on May 20, 2022. (Dash Cam Video, Ex. A.) The video depicts Bexar County Sheriff's Deputy Andrew Delgado encountering Defendant driving a white Chrysler 300 above the speed limit. Deputy Delgado pursued the vehicle and activated his emergency lights and siren to make a traffic stop. The vehicle did not stop and instead merged onto I-10. Deputy Delgado called for backup, and other fully marked Bexar County Sheriff's Office vehicles arrived to assist. The vehicle eventually came to a stop, and Bexar County Sheriff's Office deputies surrounded the vehicle with service weapons drawn and ordered Defendant to step out. Defendant was detained, along with a female passenger who had been sitting in the front seat. Deputies moved the Chrysler off the road into the parking lot of a nearby motel.

Once the vehicle was parked, Delgado's and Deputy Joe Gereb's body cameras captured a recording of the deputies' interactions with Defendant. (Body Cam Videos, Exs. B, C.) Both Defendant and the female passenger were secured in marked units. Defendant provided his name and identifying information to Deputy Delgado. Meanwhile, Deputy Gereb asked Defendant's female passenger if there was anything in the car they should be concerned about. She said there were two guns, which Deputy Gereb relayed to the other deputies. The passenger also told Deputy Gereb there were narcotics in the glove compartment. In the glove compartment, deputies recovered a black Glock 9mm pistol, a black Taurus 9mm pistol, and a white plastic bag that contained smaller baggies of narcotics. Upon confirming Defendant's identity, deputies discovered that he had a federal warrant for his arrest. Defendant and the female passenger were

arrested and transported to the Bexar County Jail for processing. The Chrysler was towed from the motel.

On June 3, 2022, Defendant was taken into federal custody pursuant to a criminal complaint and writ to the Bexar County Jail, and his initial appearance before Magistrate Judge Henry Bemporad was held the same day. Because Defendant never finished serving his prior federal sentence, he was detained without bond. (Order [#12].) A federal grand jury indicted Defendant on June 15, 2022, charging him with escape from custody in violation of 18 U.S.C. § 751(a) and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Indictment [#19].) Defendant requested self-representation, and on July 13, 2022, the undersigned conducted a *Faretta* hearing, granted Defendant's request to proceed *pro se*, and appointed standby counsel, Eddie Bravenec. (Order [#42]). Defendant was originally scheduled for arraignment on June 28, 2022, which was postponed because of his request for self-representation. (Order [#33].)

Defendant was arraigned on July 20, 2022. Mr. Bravenec filed a motion to withdraw on August 4, 2022, and David Kimmelman of the Office of the Federal Public Defender was appointed as new standby counsel on August 9, 2022. (Order [#51].) Defendant thereafter filed several *pro se* motions, including the Motion to Dismiss Indictment [#45] and Motion to Suppress Evidence and Dismiss Indictment [#59] that are currently before the Court. Given some of the statements in Defendant's filings, the Court ordered Defendant to undergo a psychiatric or psychological evaluation of his competency to stand trial pursuant to 18 U.S.C. § 4241(b). (Order [#72]). Defendant filed his Motion to Suppress Evidence and Dismiss Indictment [#78] while the evaluation of his competency was pending. The undersigned held a competency hearing on January 6, 2023, and ultimately found Defendant competent to stand trial. (Order [#83]). At the

competency hearing, the Court also revisited the *Faretta* analysis: Defendant confirmed his desire to continue to proceed *pro se* in this case, and the undersigned found Defendant's waiver of his right to counsel to be knowing and voluntary. The undersigned now considers the merits of Defendant's *pro se* motions to dismiss his indictment and to suppress evidence.

## II. Analysis

Defendants' motions to dismiss challenge his indictment and argue for his immediate release on the following bases: (1) the lack of a preliminary hearing in this case; (2) the 60-day delay between his arrest and arraignment; (3) violations of the Speedy Trial Act; (4) a "failure to prosecute"; (5) the inability to obtain necessary discovery; and (6) the lack of probable cause to support his arrest warrant. Defendants' motions to suppress seek the suppression of the firearms and narcotics seized from the vehicle, arguing that Bexar County officers unlawfully searched his car without a warrant and without his consent. The Court should deny Defendant's motions, as Defendant has not raised any valid basis for dismissing the indictment or suppressing the evidence at issue.

### A. Motions to Dismiss

Defendant's motions to dismiss should be denied. Defendant contends that the Court deprived him of a preliminary hearing to which he was entitled after his arrest. This is incorrect. Defendant did not receive a preliminary hearing because, before the hearing could take place, he was indicted by a grand jury. (Indictment [#19].) Defendant's indictment mooted the need for a probable cause determination by a magistrate judge. *See* Fed. R. Crim. P. 5.1(a)(2) ("If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless . . . the defendant is indicted.").

Nor is the delay between Defendant's arrest and his arraignment a basis for dismissing the indictment. After being arrested, a defendant must be brought without unnecessary delay before a magistrate judge. Fed. R. Crim. P. 5(a)(1)(A). A defendant must be indicted within 30 days of his arrest. 18 U.S.C. § 3161(b). Upon indictment, a defendant is arraigned in open court, where the indictment is read and the defendant is asked to enter a plea. Fed. R. Crim. P. 10(a). Defendant had an initial appearance on June 3, 2022, the same day he was brought into federal custody. He was indicted within 30 days of his arrest on June 15, 2022. The delay in his arraignment was a result of Defendant's request for self-representation and the need for a required *Faretta* hearing to evaluate the voluntariness of his waiver of the right to counsel. Originally, Defendant was slated for arraignment on June 28, 2022, while represented by counsel; Defendant was ultimately arraigned on July 20, 2022, proceeding *pro se*. This delay is not a basis for dismissing the indictment.

As to Defendant's argument that the delay of his trial violates the Speedy Trial Act, this argument is also without merit. The Speedy Trial Act "generally requires a defendant's trial to start within 70 days of his indictment or his appearance before a judicial officer." *United States v. McNealy*, 625 F.3d 858, 862 (5th Cir. 2010). However, this general rule is subject to several excludable periods of delay. For example, the act excludes any period of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). The Speedy Trial Act also excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *Id.* at § 3161(h)(1)(H).

Here, the Speedy Trial Act period began to run when Defendant was indicted on June 15, 2022. *Id.* at § 3161(c)(1) (providing for tolling speedy-trial deadlines until indictment or initial appearance, whichever is later). Additionally, the filing of Defendant's numerous pretrial motions each also triggered periods of excludable delay under the Speedy Trial Act. *United States v. Saenz*, No. 07-40344, 2008 WL 2737272, at *4 (5th Cir. July 15, 2008) (per curiam) ("Certain delays are excluded in calculating the seventy day period, including delays 'resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.'") (quoting 18 U.S.C. § 3161(c)(1)). The time required to conduct Defendant's competency examination, as ordered by the Court, was also excludable time under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(A). Defendant has not shown that there will be a Speedy Trial Act violation when trial begins on April 17, 2023.

Additionally, insofar as Defendant is arguing the delay of trial violates the Sixth Amendment, this argument is also meritless. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."); *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002) ("It will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated."). The factors recognized by the Fifth Circuit for evaluating a Sixth Amendment violation due to trial delays are only considered when the time from indictment to trial exceeds one year. *United States v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007). Defendant's trial is currently scheduled for April 17, 2023. (Scheduling Order [#85].) The time between Defendant's indictment and scheduled trial is thus less than one year. Defendant has not established a Sixth Amendment violation of his right to a speedy trial.

Defendant complains repeatedly about a "failure to appear" or "failure to prosecute" in his motion and references the absence of a prosecutor at his initial appearance and arraignment hearings. Defendant cites no applicable law showing he is entitled to dismissal of an indictment for this reason.

Defendant claims he has been unable to prepare a defense due to delays in receiving discovery. The undersigned held a hearing on Defendant's motion to compel discovery on February 9, 2023, at which Defendant presented various arguments regarding his lack of access to discovery. Following the hearing, the undersigned issued an order denying Defendant's motion, finding that Defendant could not identify any additional items that have not been produced in discovery that are in the Government's possession, custody, or control and are relevant to the issues of whether he knowingly possessed a firearm while being a convicted felon and escaped from federal custody. Because the Government has fully complied with its discovery obligations, there are no discovery-related grounds for dismissing the indictment.

Finally, Defendant raises arguments throughout this motion that the indictment contains false allegations about his escape from custody and possession of firearms and asserts there was no probable cause to support his arrest warrant. Defendant argues he faced unsafe conditions of confinement at the halfway house and was the target of an assassination attempt by corrupt government officials and terrorists who were monitoring his movements with a tracking device that had been implanted in his body. Given the video and other evidence proffered by the Government, and the dearth of evidence supporting Defendant's allegations, Defendant has not shown a lack of probable cause or any valid basis for dismissal of the indictment.

**B. Motions to Suppress**

The Fourth Amendment protects against unlawful searches and seizures by the Government, and "its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). Because officers searched Defendant's vehicle without a warrant, the Government bears the burden of proving by a preponderance of the evidence that the search complied with the Fourth Amendment. *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

The Government argues the Bexar County officers had probable cause to search Defendant's vehicle under the automobile exception to the warrant requirement. The undersigned agrees. "An exception to the Fourth Amendment's warrant requirement exists when a police officer has probable cause to search an automobile for contraband." *United States v. Powell*, 732 F.3d 361, 372 (5th Cir. 2013). In this "automobile exception" context, probable cause consists of "trustworthy facts and circumstances within the officer's knowledge [that] would cause a reasonably prudent man to believe the car contains contraband." *United States v. Banuelos–Romero*, 597 F.3d 763, 767 (5th Cir. 2010). "Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances." *Id.* (internal quotation and citation omitted).

Officer Delgado's dashboard camera demonstrates that Defendant failed to pull over when deputies attempted a traffic stop. Additionally, once the vehicle did stop, the female passenger in the vehicle voluntarily told Deputy Gereb that there were two guns in the car. Shortly afterward, she also indicated there were narcotics in the glove compartment. The Fifth Circuit has recognized that a defendant's flight from law enforcement is one fact supporting probable cause to believe a

vehicle contained contraband. *See United States v. Penny*, No. 20-10759, 2021 WL 5815922, at *1–2 (5th Cir. Dec. 7, 2021) (per curiam), *cert. denied*, --U.S.--, 142 S. Ct. 1689 (2022) (noting defendant "continued driving for miles instead of pulling over when the officers tried to stop him" as a fact supporting probable cause). Where an occupant of a vehicle states that the vehicle contains contraband, this also constitutes probable cause to search the vehicle. *See United States v. Lee*, 465 Fed. App'x. 344, 345 (5th Cir. 2012) (per curiam). Based on the totality of the circumstances, the search of Defendant's car did not violate the Fourth Amendment because the deputies had probable cause to search the vehicle and the automobile exception to the warrant requirement applied.

Moreover, it was inevitable that deputies would have discovered Defendant's guns and narcotics while conducting an inventory search of the car. The inevitable discovery doctrine "renders the exclusionary rule inapplicable to otherwise suppressible evidence if that evidence would inevitably have been discovered by lawful means." *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010). This applies where "the Government demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *Id.* The Government has satisfied this burden.

The inevitable discovery doctrine applies here, where a valid inventory search would have taken place upon Defendant's arrest and impoundment of his vehicle. *United States v. Walker*, 49 F.4th 903, 909 (5th Cir. 2022). The Fourth Amendment is "not violated when the police take custody of the property of persons they arrest to store that property for safekeeping." *United States v. Gravitt*, 484 F.2d 375, 379 (5th Cir. 1973); *see also Illinois v. Lafayette*, 462 U.S. 640, 643

(1983) ("[T]he inventory search constitutes a well-defined exception to the warrant requirement."). "[A]n inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012) (citation omitted).

At the time deputies encountered Defendant at the traffic stop, there was an outstanding federal warrant for his arrest. The Deputies would therefore have been required to arrest Defendant and to impound his vehicle. *See United States v. Leon*, 468 U.S. 897, 920 n.21 (1984) (quotations omitted) ("A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions."). The Government has submitted the Bexar County Sheriff's Office Policy Manual on Impoundment and Inventory for the Court's consideration. (Ex. D [#86-1].) Pursuant to the Policy Manual, deputies are authorized to impound a vehicle when the vehicle "obstructs a public way, and no reasonable alternative to impoundment is present" or when "the owner or driver of the vehicle is arrested, there is some connection between the vehicle and the arrest, and no reasonable alternative to impoundment is present." (*Id.* at 2.) Impoundment involves inventorying the vehicle, including the trunk and glove compartment. (*Id.* at 5.) The record demonstrates that the Bexar County deputies acted consistent to these policies and that it was inevitable that deputies would have opened the glove compartment in Defendant's car during their inventory search and found the guns and narcotics contained within. Therefore, the evidence should not be suppressed. *See Walker*, 49 F.4th at 910 (where defendant was arrested while parked at gas pump, the car was "subject to an inventory search, meaning both the firearm and cell phone would have been inevitably discovered").

## III. Conclusion and Recommendation

Having considered Defendant's motions, the Government's response, the record, and the governing law, the undersigned **recommends** that Defendant's Motion to Dismiss Indictment [#46], Defendant's Motion to Suppress Evidence and Dismiss Indictment [#59], and Defendant's Motion to Suppress Evidence and Dismiss Indictment [#78] be **DENIED**.

## IV. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections are limited to no more than 20 pages unless leave of court is granted. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the

district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED.**

SIGNED this 27th day of February, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE